UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────

WILLIS KNIGHTON,

                      Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.

────────────────────────────────────

**REPORT AND
RECOMMENDATION**

09-CV-991
(NAM/VEB)

## I. INTRODUCTION

In September of 2006, Plaintiff Willis Knighton applied for disability and disability insurance benefits under the Social Security Act. Plaintiff alleges that he had been unable to work since September of 2005 due to various physical impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff commenced this action by and through his attorney, Steven R. Dolson, Esq., seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for benefits on September 5, 2006, alleging disability beginning on September 15, 2005. (T at 10, 84-88).[1]   The claim was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York on August 20, 2008, before ALJ Michael W. Devlin. (T at 17).   Plaintiff, represented by counsel, appeared and testified.  (T at 20-45).   On October 1, 2008, ALJ Devlin issued a written decision denying Plaintiff's application for benefits. (T at 10-16).   The ALJ's decision became the Commissioner's final decision on July 2, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-4).

Plaintiff, by and through his attorney, timely commenced this action on August 31, 2009.  (Docket No. 1).  The Commissioner interposed an Answer on January 7, 2010. (Docket No. 9).  Plaintiff filed a Brief in support of his action on March 12, 2010. (Docket No. 9).  Defendant filed a Brief in opposition on April 26, 2010. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further administrative proceedings.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado</u>

3

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

_____

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 15, 2005, the alleged onset date. (T at 13).

The ALJ concluded that Plaintiff suffered from the following impairments, which the ALJ considered "severe," as defined under the Act: degenerative disc disease of the lumbar spine (status post discectomy and fusion), degenerative disc disease of the thoracic spine, neck pain with limited range of motion, and torn ligaments of the left wrist. (T at 12).  The ALJ noted that Plaintiff suffers from hypertension, but concluded that it was not a severe impairment. (T at 13).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 13).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform the full range of sedentary work, as defined in 20 CFR §§ 404.1520 (d), 404.1525, and 404.1526. (T at 13).  Plaintiff was found to be unable to perform his past relevant work as a firefighter or machine operator. (T at 15).

Considering Plaintiff's age (49 years old as of the date of the decision), education (high school), work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 15).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Act, and was not entitled to benefits. (T at 15).  As noted above, the ALJ's decision became the Commissioner's final decision on July 2, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-4).

### 2.   Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of this position.  First, Plaintiff asserts that the ALJ did not properly apply the "treating physician's rule."  Second, Plaintiff argues that the ALJ's credibility determination was flawed. Third, Plaintiff contends that the ALJ should have consulted a vocational expert.  This Court will address each argument in turn.

### a.   Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); <u>Halloran v. Barnhart</u>, 362

F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In this case, Plaintiff's treating physician, Dr. Richard Zogby, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form in July of 2008. Dr. Zogby opined that Plaintiff could occasionally lift/carry up to 10 pounds, but never more than that. (T at 494). He indicated that Plaintiff could sit for 2 hours in an 8-hour work day, stand for 1 hour in an 8-hour work day, and walk for 30 minutes during an 8-hour work day. (T at 495). Dr. Zogby also assessed limitations with regard to Plaintiff's ability to use his hands and feet. (T at 496). Dr. Zogby opined that Plaintiff could occasionally climb stairs and ramps, but could never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (T at 497).

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

The ALJ gave Dr. Zogby's assessment "significant weight only to the extent it support[ed] a conclusion that [Plaintiff] can perform work at the sedentary exertional level." (T at 13).  In support of this conclusion, the ALJ referenced a treatment note from April 2006, in which Dr. Zogby indicated that Plaintiff could return to light duty work on May 2, 2006, with minimal bending or twisting, lifting no more than 20 pounds, and the ability to alternate between sitting and standing as needed. (T at 315).  The ALJ also pointed to a May 2008 note, in which Dr. Zogby described Plaintiff as having a "partial disability - permanent, moderate." (T at 435).

For the reasons outlined below, this Court finds that the ALJ did not adequately develop the record concerning Dr. Zogby's opinion. Thus, the ALJ's assessment with regard to Plaintiff's residual functional capacity was not supported by substantial evidence.

The ALJ credited Dr. Zogby's opinion only to the extent it was consistent with the ALJ's conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform light work.  However, the ALJ did not provide a "function-by-function" assessment of Plaintiff's ability to perform work-related activities in connection with his RFC determination. Before assessing the claimant's RFC, the ALJ must consider the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).

In other words, the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y.1999).

The claimant's RFC can be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy only after the function-by-function analysis has been completed. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).  Here, the ALJ simply found that Plaintiff retained the RFC to perform sedentary work, without providing the function-by-function analysis. (T at 13).

The courts are divided as to whether the failure to provide a function-by-function analysis is *per se* grounds for remand or whether it may constitute harmless error. See, e.g., Wood v. Comm'r of Soc. Sec., No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); Casino-Ortiz v. Astrue, No. 06 Civ. 0155(DAB)(JCF), 2007 WL 2745704, at * 13 (S.D.N.Y. Sept. 21, 2007)(supporting harmless error analysis); McMullen v. Astrue, No. 5:05-CV-1484 (LEK/GHL), 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) ("[T]he ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis. The ALJ failed to specify the weight that Plaintiff could lift and/or carry or the amount of time that he could sit, walk, and stand."); Brown v. Barnhart, No. 01-CV-2962 (JG), 2002 WL 603044, at *5 & n. 5 (E.D.N.Y. Apr.15, 2002) (remanding because ALJ failed to perform function-by-function analysis).

In the instant case, remand is warranted under either standard because in failing to provide a function-by-function assessment, the ALJ appears to have overlooked at least one significant limitation. Mardukhayev v. Comm'r of Social Sec., 2002 WL 603041, at *5 (E.D.N.Y.2002) (internal citation omitted) (failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator

overlooking some of an individual's limitations or restrictions.").

The ALJ determined that Plaintiff retained the RFC to perform sedentary work, which is defined as "involving only occasional standing and walking, the lifting of no more than ten pounds at a time, and the occasional lifting and carrying of light objects." Schaal v. Apfel, 134 F.3d 496, 501 n. 6 (2d Cir. 1998); see also 20 C.F.R. § 404.1567. "Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996) ("Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday").

Thus, if Plaintiff cannot sit for six hours in an eight-hour workday, his ability to perform a full range of sedentary work has been eroded.  The record contains at least two significant pieces of medical opinion evidence suggesting that Plaintiff lacks the ability to sit for prolonged periods.  Plaintiff's treating physician opined that Plaintiff could sit for only 2 hours in an 8-hour workday. (T at 495).  Dr. Myra Shayevitz, a consultative examiner, stated that Plaintiff had "definite" limitations with regard to "prolonged sitting." (T at 410). Dr. Shayevitz described Plaintiff's "problems" as "moderately severe to significantly severe." (T at 410).

The ALJ did not make a specific finding regarding Plaintiff's ability to sit for prolonged periods and did not explicitly reconcile his decision with this medical opinion evidence.  Thus, this Court cannot determine whether or how the ALJ might reconcile his conclusion that Plaintiff could perform sedentary work with the assessments of Plaintiff's treating physician and the consultative examiner regarding prolonged sitting.

A non-examining State Agency review consultant indicated that Plaintiff could sit for

10

about 6 hours in an 8-hour work day (T at 415).  However, the ALJ noted that the consultant's opinion was likely an overstatement of Plaintiff's abilities (T at 13) and, in any event, such an opinion, without more, does not constitute substantial evidence. See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); see also McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009).

The ALJ appears to have discounted Dr. Zogby's opinion regarding Plaintiff's limitations because of Dr. Zogby's reference to "partial disability" in 2008 and his conclusion that Plaintiff could return to "light duty" work in 2006.  However, the ALJ should have re-contacted Dr. Zogby to explain this apparent inconsistency before discounting his opinion. The "partial disability" reference was made in the worker's compensation context, which is not governed by the same standard as applications for Social Security disability benefits. See Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [Plaintiff's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").

Moreover, it is not as though Dr. Zogby's July 2008 assessment is an outlier with regard to Plaintiff's limitations.  Rather, Dr. Shayevitz also found "moderately severe to significantly severe problems" and assessed limitations that appear to be contrary to the ALJ's RFC determination. (T at 410).

The ALJ has an "affirmative duty to develop the record and seek additional

11

information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

On remand, the ALJ should (1) re-contact Dr. Zogby to address the apparent inconsistency between his treatment notes and his July 2008 assessment, (2) reconsider the medical opinion evidence, applying the treating physician's rule to Dr. Zogby's opinion, as supplemented, and (3) provide a function-by-function assessment of Plaintiff's ability to perform work-related activities.

### b.   Credibility

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to

enable us to decide whether the determination is supported by substantial evidence." Lewis

v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's

contentions, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an
> underlying medically determinable physical or medical
> impairment (s) ... that could reasonably be expected to produce
> the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity,
> persistence, and limiting effects of the individual's symptoms to
> determine the extent to which the symptoms limit the
> individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the

plaintiff's contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination regarding the plaintiff's

credibility:

1.    [Plaintiff's] daily activities;
2.    The location, duration, frequency and intensity of
      [Plaintiff's] pain or other symptoms;
3.    Precipitating and aggravating factors;
4.    The type, dosage, effectiveness, and side effects of any
      medication [Plaintiff] take[s] or ha[s] taken to alleviate ...
      pain or other symptoms;
5.    Treatment, other than medication [Plaintiff] receive[s] or
      ha[s] received for relief of ... pain or other symptoms;
6.    Any measure [Plaintiff] use[s] or ha[s] used to relieve ...
      pain or other symptoms;
7.    Other factors concerning [Plaintiff's] functional
      limitations and restrictions due to pain or other
      symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, he or she must state

13

his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified that he experiences pain and numbness in his arms and hands, particularly in his left arm/hand. (T at 32-33).  According to Plaintiff, he can sit for about an hour and stand or walk for between 45 minutes to an hour. (T at 35-36). The ALJ found that Plaintiff's subjective complaints were "not fully credible." (T at 14).

In particular, the ALJ noted that Plaintiff was able to perform daily activities like caring for pets, preparing simple meals, driving a vehicle, and helping with household chores. (T at 14). However, it is well-settled that "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Moreover, Plaintiff had a 20-year history of maintaining employment and should have been afforded enhanced credibility on that basis. (T at 97). See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

On remand, the ALJ should revisit his credibility determination to address these concerns.  In addition, Plaintiff's credibility will need to be assessed in light of the medical opinion evidence referenced above, as further developed on remand.

14

### c.    Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. §

15

404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. (T at 15). As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).

When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

The record indicates that Plaintiff suffers from non-exertional impairments, such as pain and numbness, limited range of motion in his neck, and difficulty gripping and fingering objects. (T at 410, 496-97). The ALJ did not specifically address these non-exertional impairments in the context of his step five analysis. (T at 15). This was an error. In addition, the ALJ's reliance on the Grids was based upon his RFC determination, which was flawed

16

for the reasons outlined above.  As such, this aspect of the ALJ's decision will also need to be revisited on remand.

      **3.**      **Remand**

      "Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

      For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, the decision of the Commissioner be reversed, that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

                              Respectfully submitted,

Dated:   March 2, 2012

       Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

18

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 2, 2012

Victor E. Bianchini
United States Magistrate Judge

19